WILLIAM CHANDLER *vs.* CHARLES A. DE GRAFF and others.

## May 22, 1878.

**Negligent Intermingling of Goods—Rights of Innocent Part-Owner.**—In filling certain contracts for the delivery of a definite number of railroad ties, of a specified quality and description, plaintiff delivered some 20,000 of like quality, value and description, in excess of the contracts, which defendants refused to accept. Such surplus having, by the act of the plaintiff, and without fault on the part of the defendants, become so intermingled with the accepted ties belonging to the latter as to be undistinguishable therefrom, *held,* that the latter were entitled of right to take and use from the common lot a number equal to their proportionate share of the whole.

**Same—Such Part-Owner not liable to Co-owner.**—During the performance of the same contracts, plaintiff also delivered other ties of an inferior quality, that were never accepted by the defendants, on the contracts or otherwise, and left the same piled and commingled with the accepted ties, without defendants' knowledge. Subsequently, in using their own, the defendants, through ignorance and by mistake, took and used some of said ties of plaintiff which were so intermingled with their own, supposing that the piles they took, and which included plaintiff's ties so taken and used, contained only accepted ties. Plaintiff never has made any demand for his ties. *Held,* upon these facts, an action *ex contractu* will not lie to recover their value.

**Charge—Hypothetical Statement.**—It is not error to give an instruction upon an hypothetical statement of facts, relevant to the issue, where there is sufficient evidence in its support to go to the jury.

**Same—Assuming Facts in Controversy.**—It is not error to refuse a request that contains an unqualified implication of the truth of any controverted facts.

**Same—Exact Language of Request.**—Where in an instruction given in response to a request, the party proposing it gets the whole benefit of his request, no exception will lie to a refusal to give it in its exact language.

Appeal by plaintiff from an order of the district court for Hennepin county, refusing a new trial, after a trial before *Young,* J., and a jury. A former appeal in the action is reported, 22 Minn. 471.

*E. C. Palmer,* for appellant.

*Gilman, Clough & Lane,* for respondents.

CORNELL, J. As we understand, the following are the undisputed facts, conceded by both parties: Defendants being engaged in the construction of certain lines of railroad, the plaintiff, either as an original party or assignee, entered into and undertook the performance of various tie contracts made with them, whereby he became obligated to deliver to them, subject to inspection, etc., different quantities of railroad ties, amounting in the aggregate to 224,000. By the terms of one of these contracts, "Exhibit 1," 100,000 ties were required to be delivered, at his option, either "on the line of the St. Paul and Pacific, at Brainerd, or on the line of the Northern Pacific, not more than forty miles east of Brainerd, and as near Brainerd as possible, or on the line of the St. Paul and Pacific railroad at any point between Sauk Rapids and Brainerd." Contract, "Exhibit 2," called for the delivery of 60,000 ties "on the line of the St. Paul and Pacific railroad at Brainerd." Contract, "Exhibit 3," required the delivery of 25,000 ties "on the line of the Northern Pacific railroad, within forty miles of Brainerd." There were two other contracts, one known as the "Halden Contract," for 14,000, and the other a parol contract, for 25,000, and the record before us does not disclose specifically the required place of delivery under either of them. In the performance of these various contracts, plaintiff delivered 20,379 more ties than sufficient to fill them; and though they were of like quality, kind and value as those called for and accepted on the contracts, the defendants refused to accept them on final settlement, or to pay therefor.

The present controversy principally concerns this excess, the rest of the ties that were delivered having been received and paid for, except some that were rejected on the inspection, as culls, for not answering the requirements of the contracts, the claim for which will be hereafter separately considered.

It is contended by the plaintiff that this excess occurred entirely in the delivery along the Northern Pacific railroad, and that it comprised the last 20,379 ties that were there

delivered; and as the defendants took and appropriated all the ties that were left on delivery on that line of road, they were liable to him for such surplus in this action. This is contested by the defendants, who claim that the ties constituting the surplus were never in fact delivered and piled separately and distinct from the rest, neither were they delivered exclusively upon either line of road, nor under or during the fulfilment of either contract; but that they were indiscriminately delivered with the rest, and while all the contracts were being performed together as one contract or job, and were at the time so intermingled with those received and accepted under the contracts, and paid for by the defendants, as to become wholly undistinguishable therefrom. Which of these respective theories was true, was a question of fact fairly open to controversy upon the evidence, and, therefore, proper for submission to the jury for its determination. The point taken by plaintiff, that it was not properly and impartially given to the jury as a controverted question, is not, it seems to us, supported by any just construction of the charge or any portion thereof. The instructions the court gave in response to the first and second requests of the defendants, which are particularly excepted to on this ground, are not open to this objection. In neither of these requests is the truth of the facts, as therein stated, unqualifiedly assumed as unquestioned and undisputed; on the contrary, such facts are, clearly, only hypothetically stated, as a basis upon which to predicate the legal propositions they contained. In this there was no error.

In respect to the legal propositions themselves, as applicable to the state of facts thus stated and assumed, there is no room to question their correctness, either upon principle or authority. If, without any fault of defendants, the ties in question became, by plaintiff's act, so commingled with those transferred to them by delivery, acceptance and payment, as to be undistinguishable therefrom, the defendants had lawful right to take and use from the common mass or lot their

CHANDLER v. DE GRAFF. 91

proportionate share, without restriction in choice to any particular portion of said common lot, provided there was no advantage in selection as to quality, value or otherwise. *Ryder* v. *Hathaway*, 21 Pick. 298; *Smith* v. *Morrill*, 56 Me. 566; *Moore* v. *Erie Ry. Co.*, 7 Lans. 39; *Simms* v. *Glazener*, 14 Ala. 695. The effect upon plaintiff's legal rights of an acceptance by him of the written order of defendants for these ties was correctly stated in defendants' third request, and the court committed no error in giving it to the jury.

It is admitted that the instructions given in response to defendants' fourth request were in accordance with the ruling and views of this court on the former appeal in this action, (22 Minn. 471,) wherein the question as to the character of the contracts between the defendants and Moorhead, as construction agent, and the effect of their provisions upon the title to the ties in question, as between the defendants and the railroad company, was considered and determined; but we are now asked to reconsider that question, on the ground that the case, as now presented, rests upon a different state of facts. Upon examination, we are unable to discover any essential difference in respect to any fact or testimony having any bearing upon the questions which were then considered and determined, and, of course, there is no reason for reconsidering the decision which was then made.

The fifth and sixth requests of the defendants, and the instructions given thereunder, relate to the rejected ties or "culls." The exceptions taken present for consideration two legal propositions: 1. If these ties were not such as were called for by any of the contracts, and defendants never accepted them or agreed to, no action upon contract could be maintained by the plaintiff against the defendants to recover their value. 2. If such ties, through plaintiff's fault, became intermingled with the accepted ties belonging to the defendants, and were suffered by him so to remain, without any knowledge of the fact on the part of the defendants, the latter, in the absence of any demand from the plaintiff,

could not be made liable as for a conversion, for innocently and ignorantly taking and removing them with their own, under the supposition that they were a portion of the accepted ties which they owned. Both these propositions were correct. The latter was, doubtless, irrelevant under the pleadings; but as no harm could result, it furnishes no ground for a new trial.

Concerning plaintiff's requests that were refused, the eighth was based upon the erroneous assumption that a delivery, upon the line of the Northern Pacific road, of any portion of the surplus ties, however few in number, was a controlling fact or circumstance, that entitled him of right to demand and receive the whole surplus on that line. The denial of the request was right.

The gist of his ninth request was that the alleged settlement, therein referred to, constituted no defence to a recovery, if the jury found the facts as therein stated. Instead of giving the request in this language, the court, in substance, instructed them that such settlement was no defence, irrespective of such facts, for the reason that it in no way affected his ownership of the ties in question. He got the whole benefit of his request in the instruction as given, and, of course, was not prejudiced by the omission to give it *ipsissimis verbis*.

His tenth request was properly refused, because of the unqualified implication upon which it rested, that the necessary facts had been proved which would render the instruction proper. Whose duty it was to separate the culls from the accepted ties depended upon the facts and circumstances which it was the province of the jury, and not the court, to determine.

The cause of action stated in the amended complaint was clearly one arising *ex contractu*, and the instructions and rulings of the court in respect thereto were unobjectionable.

Taking the entire charge together, it gave the plaintiff the full benefit of any implied contract that could lawfully be

inferred from any possible state of facts that the jury could find from the evidence, and was as favorable to the plaintiff as the law would warrant.

In respect to the other exceptions taken and points made by plaintiff, we are satisfied, upon examination, that none of them can be sustained; and as we have already considered and passed upon all questions of any real merit or importance in the case, a more specific reference to these is deemed unnecessary.

Order affirmed.