Parish vs. McPhee.

PARISH, Respondent, vs. McPHEE, Appellant.

*January 31 — February 21, 1899.*

*Sale of timber: Contract construed.*

1. Under a contract by which defendant was to pay a certain price for timber to be "furnished" by plaintiff, the latter is not entitled to recover the full contract price for timber which, after she had cut it, was found to belong to the United States, and for which defendant was compelled to pay the government, but defendant should be credited with the amount paid to the government,

2. At the time of making such contract defendant was negotiating for the purchase of certain lands, and instructed plaintiff to cut the timber therefrom, and afterwards purchased and became the owner of such timber.   *Held,* that this timber was not "furnished" by plaintiff under the contract, and that she could recover the contract price therefor only after crediting defendant with the value of the stumpage.

APPEAL from a judgment of the circuit court for Ashland county: O. B. WYMAN, Judge.   *Reversed.*

On November 24, 1894, plaintiff and defendant entered into a written contract in legal effect as follows: The plaintiff thereby sold and conveyed to defendant all the merchantable pine timber on certain described lands and gave defendant the right to enter upon said lands and manufacture such portions of said timber as was fit therefor into "wany timber." Plaintiff agreed to cut into saw logs the remaining timber on said land, and to deliver the saw logs and "wany timber" on the lake at Big Bay, Madeline Island, prior to April 1, 1895. Defendant agreed to pay for such logs and timber $10 per thousand feet when delivered in the manner specified in the contract, and to complete the cutting of the "wany timber" prior to January 15, 1895. After providing for the method of scaling the timber, the contract contained the following provision: "It is further agreed by the parties hereto that in case said party of the first part [plaintiff] furnishes to the party of the second part any timber other than that above described, of a grade equal to or better than the above-mentioned timber, the party of the second part will accept the same upon the terms and conditions herein set forth." Under the contract, plaintiff also sold to defendant certain hemlock boom sticks at the rate of $5 per thousand feet.

At the time this contract was made, plaintiff had an agreement with one Lamoreaux to sell her the timber on certain lands claimed by him under an allotment from the United States, and also an agreement with one Seim, a homesteader, for timber on his homestead. It afterwards appeared that neither party had any right to sell their timber, and, after it had been cut, it was seized by the United States, and defendant paid for the same at the rate of $6 per thousand feet.

Plaintiff and defendant's men cut and put in the timber on plaintiff's land, and also on the lands of Lamoreaux and Seim. They also cut quite a large quantity of timber upon

Parish vs. McPhee.

lands adjoining plaintiff's homestead, to which she had no title. The total amount of pine cut was 253,820 feet, and hemlock 43,000 feet. Of this amount, 24,950 feet came from Seim's homestead, and 65,740 feet from the Lamoreaux claim. The remainder was cut on plaintiff's homestead and adjoining lands, to which defendant afterwards acquired title. While the court made no finding as to the fact, the evidence fairly shows that the pine cut on the plaintiff's homestead amounted to about 65,000 feet, and that the greater part of the hemlock came from the same land. After the logs were delivered, the plaintiff brought this action to enforce a lien upon said logs for the purchase price unpaid. Defendant gave a bond, and took possession of the logs. The case was tried before the court without a jury, and findings made in favor of plaintiff for the amount of her claim, less the amount paid by defendant to the government for the timber cut on the Lamoreaux and Seim lands, and payments made on the contract.

The defendant appeals from the judgment entered upon the findings so made.

For the appellant there was a brief by *W. W. O'Keefe,* attorney, and *Gleason & Sleight,* of counsel, and oral argument by *E. F. Gleason.*

For the respondent there was a brief by *Cate, Sanborn, Lamoreux & Park,* and oral argument by *B. B. Park.*

BARDEEN, J. Upon the argument, both parties asked the court to determine this case upon the merits, regardless of any technical questions which might be urged as to the right of the plaintiff to maintain this action, or as to any technical errors occurring on the trial. Ignoring all questions of that nature, we shall proceed to dispose of the case upon the evidence and findings of the court.

It developed upon the trial that the timber claimed to have been delivered by the plaintiff under her contract came

from four different sources: (1) From the plaintiff's homestead; (2) from land owned or acquired by the defendant; (3) from land allotted by the United States to the Indian, Lamoreaux; (4) from the Seim homestead. The timber cut from the plaintiff's homestead was expressly mentioned in their written contract, and there is no controversy but that she is entitléd to the contract price therefor. The timber cut upon the other lands was furnished under a clause in the contract which reads as follows: "It is further agreed by the parties hereto that in case the said party of the first part [plaintiff] furnishes to the party of the second part any timber other than that above described, of a grade equal to or better than the above-mentioned timber, the party of the second part will accept the same upon the terms and conditions herein set forth."

At the time this contract was made, plaintiff had a contract with Lamoreaux and Seim to purchase the timber on their lands. This fact was made known to defendant, and the parties apparently acted upon the assumption that both Lamoreaux and Seim had a lawful right to sell such timber. It appears, however, that neither had such right as against the government; and, after the same had been cut, the government officers took possession of the logs. The defendant arranged a settlement for the trespass, and paid the government at the rate of $6 per thousand feet for the timber so cut. The plaintiff claimed that these were logs "furnished" under the clause in the contract above quoted, and sought to recover the full contract price therefor; but the court very properly allowed the defendant the sum paid by him to the government. Both parties had full knowledge of the situation, and acted under the mistaken idea that the parties named had a right to sell said timber. No reason is perceived why the decision of the trial court was not an equitable adjustment of the matter.

As to the timber cut on the lands adjoining plaintiff's

homestead, known as the *McPhee* lands, the court finds that, at the time of the execution of the contract in suit, defendant was negotiating for the purchase of the same, and that he then, and at divers other times, "authorized and instructed" the plaintiff to cut said timber, and that he afterwards purchased and became the owner thereof. In his conclusions of law, however, he allows the plaintiff the full contract price for the timber so cut, regardless of the question of stumpage. He places it on the same foundation as the timber cut from her own lands. The facts found by the court are strenuously disputed by defendant. There is, however, evidence to support the findings; and the evidence against them is not so overwhelming that we feel justified in setting them aside. The court's conclusion of law, however, cannot stand. It works great injustice to defendant, in that it amounts to a donation of the stumpage to the plaintiff. When it was agreed that defendant would receive other timber furnished by plaintiff, it did not mean that she could trespass indiscriminately, and compel defendant to take logs to which she had no title, and claim the full contract price. It seems very plain that she could not compel defendant to take and pay for logs "furnished" by her, unless they were such as she owned and had a right to sell. The court therefore fell into error when he allowed plaintiff the full contract price for the timber cut on the *McPhee* lands. The exact amount of these logs is not separately found, but it is stated that the pine cut on plaintiff's homestead and the *McPhee* lands is 163,130 feet, and the hemlock 43,000 feet. The evidence shows that the pine timber cut on plaintiff's land was about 65,000 feet. It also shows that the greater part, if not all, of the hemlock was cut on her lands. Assuming these facts to be established as fully as though an express finding had been made, what ought to have been the ruling of the court upon the rights of the parties under the situation presented? The fact is undisputed that defendant

was negotiating for these lands at the time the original contract was made. The court has found, upon sufficient evidence, that defendant "authorized and instructed" the plaintiff to cut on these lands. Such authorization would seem to imply a promise on the part of the defendant to pay plaintiff for the work she was to do. The defendant having secured and paid for the stumpage, a just solution of the controversy would be to allow defendant the actual value of this timber. By so doing, neither party is allowed any advantage over the other. Plaintiff would thereby be paid for the work she had done, and defendant would secure pay for the stumpage value of the timber. Inasmuch as the evidence furnishes no basis upon which to compute the value of such stumpage, we have thought best to remand the case to the court below to take proof as to this one fact, on the basis that there was 98,130 feet of this timber. It fairly appearing from the evidence that the timber was not cut later than March 1st, interest should be allowed on such value from that date to April 1st thereafter. Judgment should then be entered for the plaintiff for $1,574.31, less this amount, with interest from April 1, 1895.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for further proceedings in accordance with this opinion.